Gregory J. RUBINO and Lisa M. Rubino, Appellants

v.

## MILLCREEK TOWNSHIP BOARD OF SUPERVISORS.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.
Decided Jan. 22, 2014.

Joseph M. Kanfer, Erie, for appellants.

Evan E. Adair, Erie, for appellee.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Gregory J. and Lisa M. Rubino (Landowners) appeal an order of the Court of Common Pleas of Erie County (trial court) that affirmed the denial of their subdivision application by the Millcreek Township Board of Supervisors (Township). Landowners seek to subdivide their existing 3–acre residential property into two lots so that they can build a new house on the second lot. The trial court affirmed the Township's denial of Landowners' application because the size of the proposed two lots would be out of scale with the other ten lots in the recorded subdivision plan that created Landowners' lot. Discerning no error, we affirm the trial court.

Landowners acquired their home and 2.952–acre lot at 520 Elizabeth Lane, Erie, in 2006 at a cost of $365,000. Landowners' deed describes their parcel as "Lot No. Eight (8) of GARNESDIYO SUBDIVISION a plot of said Subdivision being re-corded in Erie County Map Book 7 at Page 45." Reproduced Record at 242 (R.R. ___). Lot No. 8 is one of 11 lots created in 1966 out of 29.925 acres of land owned by Tracy and Marianne Griswold in a subdivision plan recorded as "SECTION NO. 1 GARNESDIYO." R.R. 284. The lots in Section No. 1 ranged from 1.31 to 4.18 acres in size.[1]

Thereafter, the Griswolds continued to subdivide their land. In 1975, by a subdivision plan titled "SECTION NO. 2 GARNESDIYO," the Griswolds created a single lot of 2.309 acres, "Lot No. Twelve (12)." R.R. 285. In 1979, they filed "SECTION NO. 3 GARNESDIYO," which created Lots 13 through 23 out of 22.63 acres; the lots ranged in size from 1.2 to 3.71 acres. R.R. 286. In 1980, they filed "SECTION NO. 4 GARNESDIYO," which created Lots 24 through 31 out of 9.241 acres; the lots ranged in size from .885 to 1.35 acres. R.R. 288. In 1981, they filed "SECTION NO. 5 GARNESDIYO," which created Lots 28 through 37 out of 6.811 acres; the lots ranged in size from .971 to 1.316 acres. R.R. 290. In 1982, they filed "SECTION NO. 6 GARNESDIYO," which created Lots 38 through 43 out of 6.31 acres; these lots ranged in size from .806 to 1.22 acres. R.R. 291. In sum, the Griswolds filed six separate subdivision plans for each proposed "section" of the residential subdivision known as Garnesdiyo.

On June 2, 2011, Landowners filed a subdivision plan to turn "Lot No. 8" of "Section 1" of Garnesdiyo into two lots. The plan proposed to create one lot of approximately 1.6 acres, i.e., "Lot No. 8," and a second lot of approximately 1.4

1. Lot No. 1 equaled 2.173 acres; Lot No. 2 equaled 1.31 acres; Lot No. 3 equaled 2.43 acres; Lot No. 4 equaled 2.28 acres; Lot No. 5 equaled 2.42 acres; Lot No. 6 equaled 4.18 acres; Lot No. 7 equaled 3.75 acres; Lot No. 8 equaled 2.952 acres; Lot No. 9 equaled 2.83 acres; Lot No. 10 equaled 2.63 acres; and Lot No. 11 equaled 2.97 acres. R.R. 270. Lot No. 2 is located in a corner of Section No. 1 and, thus, is smaller than the others.

acres, *i.e.*, "Lot No. 8A." The Township disapproved Landowners' subdivision plan for the stated reason that it did not satisfy the Township's Subdivision and Land Development Ordinance (SALDO).[2]

Specifically, the Township relied upon Section 11.16(15) of the SALDO, which states as follows:

> The Board of Supervisors shall not approve any proposed subdivision or replot of a lot or lots *where such lot(s) is or are located in a subdivision of record and the proposed replot or subdivision would create lots smaller than the typical or average size of lots as shown in such recorded subdivision.* This prohibition is expressly intended to protect those persons who purchase lots in reliance upon lot sizes and configurations as shown on an approved and recorded development plan.

SALDO, § 11.16(15); R.R. 147 (emphasis added). "Subdivision" is defined in the SALDO, as follows:

> *[T]he division or redivision or replot of a lot, tract or parcel of land by any means into two or more lots,* tracts, parcels or other divisions of land, including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development; Provided, however, that the subdivision by lease of land for agricultural purposes into parcels of more than ten (10) acres, not involving the construction or extension of any street or easement of access or any residential dwelling, shall be exempted. Shall be deemed included within the term "development" when that term is used generally.

SALDO, § 3.04; R.R. 35 (emphasis added).

The Township reasoned that Section 11.16(15) of the SALDO was intended to allow those who purchase real property to rely upon the recorded subdivision plan by which their lot was created. Seven of Landowners' neighbors in Section No. 1 of the Garnesdiyo Subdivision opposed Landowners' application on the ground that it would adversely affect the overall appearance of their neighborhood, which is one with large lots. Concluding that Landowners' proposed subdivision would create two lots out of scale with the remaining ten lots in Section No. 1 of Garnesdiyo, the Township held that Landowners' proposal violated Section 11.16(15) and denied their application.

Landowners appealed to the trial court. They argued that the Township erred in treating Section No. 1 as a separate subdivision for the purposes of Section 11.16(15) of the SALDO.[3] When the entire Garnes-

**2.** Millcreek Township Subdivision and Land Development Ordinance No. 65–1 Amended and Restated as 2006–9 Effective July 18, 2006.

**3.** The Township rejected this reading of the SALDO, explaining as follows:

> No concept or preliminary plan of all or even most of the land involved in these various subdivision plans was ever submitted to or approved by the Township. If there was some "big picture" approach to development, nothing exists of record which might have alerted this Board or anyone purchasing lots to that grand design or concept. Instead, nine years passed following approval of this subdivision before a second, creating one additional lot, directly across from Lot 8 abutting Tramarlac Lane.
>
> The plain language of Section 11.16(15) is to afford some protection, to persons buying lots in reliance on plans of record and also this Board in approving those plans against subsequent activity which would materially alter the circumstances. [Landowners'] contention that the term "subdivision" should mean and refer to the ultimate totality of development of land using, in one way or another, the same or a similar name, necessarily carries with it the contention that the term should be defined

diyo Subdivision is considered, the size of the two lots Landowners seek to create satisfies the "typical or average size of lots required by Section 11.16(15)" because the median lot size of all 32 lots in the Garnesdiyo Subdivision is 1.316 acres. R.R. 273. Stated otherwise, half of the lots in the Garnesdiyo Subdivision are smaller than 1.316 acres, and half are larger. Landowners' Brief at 11. The trial court rejected this argument. It held that Landowners' proposed lots would be approximately 50% the size of the average lot size in Section No. 1, which was the "recorded subdivision" to consider for purposes of Section 11.16(15) of the SALDO.

Landowners have appealed to this Court and raise one issue.[4] They contend that their deed refers to the "Garnesdiyo Subdivision," and it is the entire "Garnesdiyo Subdivision" that must be considered when applying Section 11.16(15) of the SALDO. Landowners offer several arguments in support of their position.

Landowners first argue that it is obvious that the separate "section" filings were intended to create a single subdivision, known as Garnesdiyo. This is why each of the six subdivision plan filings that created Garnesdiyo were numbered sequentially, and each filing was called a "section," not a "subdivision." Likewise, the lots in each "section filing" are sequentially numbered from the lots in the preceding subdivision plan. Each "section filing" specifically related to the subdivision known as "Garnes-

diyo." "Section" is not defined in the Township's SALDO, and Landowners note that one dictionary definition of "section" is "one of several component parts." Landowners' Brief at 15 (citing COLLINS ENGLISH DICTIONARY (10th ed.)). Another dictionary defines "section" as a "part separated or cut off from something; each of the portions into which a thing is cut or divided." *Id.* at 15–16 (citing THE SHORTER OXFORD ENGLISH DICTIONARY (6th ed. 2007)). Landowners contend that "section" was the term chosen to denote each filing because each was intended to be part of the whole, *i.e.*, the Garnesdiyo Subdivision.

The Township counters that the term "subdivision" is defined in the SALDO, and the term must be construed according to that definition. *See Commonwealth v. Lobiondo*, 501 Pa. 599, 603, 462 A.2d 662, 664 (1983) (a statute must be construed according to a definition provided therein, not by a definition arising from common law). Here, Section No. 1 was a "subdivision" because it was the legal filing that created a "division ... of a lot, tract or parcel of land" owned by the Griswolds. SALDO § 3.04. Further, there is only one *recorded subdivision plan* that refers to Landowners' Lot No. 8, and that is the subdivision plan entitled "Section 1" and recorded in 1966. The trial court agreed with the Township, noting that a "subdivision" is defined as a "parcel of land in a larger development." BLACK'S LAW DICTIONARY 1560 (9th ed. 2009).

in a retroactive sense, not on the basis of what a person or this Board might know at the time a lot is purchased or action on a plan application is taken. It obviously would enable precisely the actions the express terms of the Section prohibit. That plainly is contrary to the obvious intent of the Section. The subdivision here was that plan approved May 2, 1966 and recorded in Map Book 7, page 45.

Board of Supervisors Opinion at 4; R.R. 314.

4. Where the trial court has not taken any additional evidence, our standard of review is limited to determining whether the governing body has committed an error of law or abused its discretion. *Herr v. Lancaster County Planning Commission*, 625 A.2d 164, 167 (Pa. Cmwlth.1993).

**1158**

We reject Landowners' construction of Section 11.16(15) of the SALDO because it does not give effect to its chosen language, i.e., "a subdivision of *record.*" R.R. 147 (emphasis added). Further, the only *recorded* subdivision plan that lists Lot No. 8 is the subdivision known as "SECTION NO. 1 GARNESDIYO." R.R. 284. The stated purpose of Section 11.16(15) of the SALDO is "to protect those persons who purchase lots in reliance upon lot sizes and configurations as shown on an approved and recorded development plan." R.R. 147. Such intent is rendered meaningless if the subsequent subdivisions of surrounding land changed the average size of lots in the specific recorded subdivision that created Landowners' lot.

In their second argument, Landowners assert that the history of the Garnesdiyo Subdivision demonstrates that each of its six sections was to be treated as part of the whole. Landowners explain that Garnesdiyo was created over time from two parcels of land owned by the Griswolds. The streets in the Garnesdiyo Subdivision connect to each other and, thus, relate to each other. Further, later plan filings have maps that show earlier subdivision plan filings.

The Township responds that at the time of the 1966 subdivision, i.e., Section No. 1, the SALDO did not require a landowner to submit a preliminary plan to describe future development intentions. Further, the six separate subdivision filings do not refer to the earlier subdivision filings of the Griswolds, except by their numbering system. It is true that the later subdivision plans had site maps that included part of the earlier subdivision plans filed by the Griswolds. However, the trial court reasoned that this was done because the SALDO had been amended by the time of those later applications to require proposed plans to include a site map showing adjacent properties. The SALDO requires a preliminary plan application to "set forth" and "map" the "[e]xisting plotting and other [numerated] conditions of adjacent land within 500 feet of the land within the development." SALDO §§ 7.04(6)(J), 7.04(7)(J); R.R. 82–83.

We reject Landowners' argument that the subdivision numbering system and the site maps attached to the plan filings collapsed each of the Griswolds' subdivision plan applications into one "subdivision of record." For purposes of Section 11.16(15), Section No. 1 is the "subdivision of record."

Landowners next assert that the trial court erred in relying on a dictionary definition of "section" as "a piece of land one square mile in area forming one of the 36 subdivisions of a township." Trial Court Opinion at 4 (citing WEBSTER'S COLLEGIATE DICTIONARY 1061 (9th ed. 1989)). Landowners argue that this definition relates to the Public Lands Survey System and has no application to this case.

The Township counters that the trial court's mention of this definition is irrelevant. It did so in passing and only to note that the term "section" was capable of many constructions and in no way central to its holding. We agree. Numbering each subdivision plan sequentially and titling each a "section" is of no moment. Each application proposed a separate subdivision plan that was considered on its own merits. Each was separately recorded.

Finally, Landowners argue that the Township and the trial court placed too much emphasis on the fact that there existed no preliminary plan requirement in 1966 when Section No. 1 was recorded. It cannot be inferred from the absence of that requirement that the Griswolds did not intend to create a single "Garnesdiyo Subdivision," as shown in the Landowners'

deed. Further, the later subdivision plan filings refer to a "future street" or "future development" or "temporary turn-a-round." R.R. 285–91.

The Township responds that no other "subdivision plan of record" refers to Lot No. 8 or to any of the other ten lots in Section No. 1 of the Garnesdiyo Subdivision. It also notes that Section 11.02(1)(D) of the SALDO explains that a development will not be permitted if it will landlock an adjacent parcel and "boundary line(s) of adjacent undeveloped land shall be assured, with easements as required to be obtained for turn-arounds." R.R. 132. Notations about future streets, development or turn-arounds responded to these requirements of Section 11.02(1)(D) and did not collapse the six subdivision plan filings into a single subdivision plan for purposes of determining average lot size. We agree. References to future development, which are required by the SALDO,

did not eliminate Section No. 1, i.e., the "subdivision of record," and replace it with the larger "Garnesdiyo Subdivision," which is not shown, in its entirety, in a single subdivision plan of record.

For these reasons, we affirm the trial court's order.

## ORDER

AND NOW, this 22nd day of January, 2014, the order of the Court of Common Pleas of Erie County dated May 31, 2013, in the above-captioned matter is hereby AFFIRMED.